**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANDRE YOUNGBLOOD**

                              **Plaintiff,**

  vs.                                                         9:10-cv-00752
                                                                         (MAD/DRH)

**D. ARTUS, Warden, Clinton Correctional Facility;**
**LESTER N. WRIGHT, Deputy Commissioner,**
**V. JOHNSON, Head Nurse Administrator, Clinton**
**Correctional Facility; R.N. SMITH; MRS. BADGER,**
**Nurse, Clinton Correctional Facility; CATHY RYAN,**
**Nurse, Clinton Correctional Facility; ADAMS, Dr.,**
**Clinton Correctional Facility,**

                              **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**ANDRE YOUNGBLOOD**
**03-A-1665**
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          **CHRISTOPHER W. HALL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff *pro se*, an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42

U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth Amendment when

they were deliberately indifferent to his serious medical needs. *See* Dkt. No. 1. In a Report-Recommendation and Order dated July 22, 2011, Magistrate Judge Homer recommended that the Court grant in part and deny in part Defendants' motion to dismiss. *See* Dkt. No. 28.

Currently before the Court are the parties' objections to Magistrate Judge Homer's July 22, 2011 Report-Recommendation and Order. *See* Dkt. Nos. 29, 31.

## II. BACKGROUND

### A. Factual background

In his complaint, Plaintiff alleges that his Eighth Amendment rights were violated during his confinement at the Clinton Correctional Facility ("Clinton C.F."). *See* Dkt. No. 1 at 1. The violations of which Plaintiff complains occurred in October and November of 2009, and January of 2010. *See id.* at 6. Plaintiff alleges that during that time, the Clinton C.F. medical staff failed to provide him with his medication for an asthma condition and failed to provide him with treatment during an asthma attack. *See id.* at 6, 7. Also, Plaintiff claims that the medical staff failed to provide him with his seizure medication and denied an emergency medical request that he made, after which he suffered a seizure. *See id.* Plaintiff further alleges that his appeals to the Clinton C.F. medical staff's superiors were ignored. *See id.* at ¶¶ 6(e), (g) & (h).

Specifically, Plaintiff claims that, on October 26, 2009, Defendant Badger told Plaintiff that she was tired of bringing him his asthma inhaler and that she would speak with Defendant Adams about giving Plaintiff self-carry privileges for his inhaler. *See id.* at ¶ 6(a). On October 28, 2009, Defendant Adams terminated Plaintiff's inhaler prescription. *See id.* at ¶ 6(e). Then, on October 31, 2009, Defendant Ryan did not give Plaintiff his morning seizure medication. *See id.* at ¶ 6(c).

2

Thereafter, on November 4, 2009, Plaintiff suffered an asthma attack, but Defendant Ryan did not provide treatment. *See id*. at ¶ 6(b). That same day, Plaintiff wrote to Defendant Wright about his problems with the medical staff at Clinton C.F. *See id*. at ¶ 6(h). Defendant Wright replied that Plaintiff should address his issues to "the health care staff using the existing sick call procedure[s]." *See id*. Plaintiff also raised his issues with Defendant Artus on November 10, 2009, but they were never resolved. *See id*. at ¶ 6(g).

On January 19, 2010, Plaintiff suffered a seizure after Defendant Smith denied his request for emergency treatment. *See id*. at ¶ 6(d). The next day, Plaintiff complained to Defendant Johnson about the issues he was having with her staff, but Defendant Johnson allegedly responded by justifying her staff's behavior and ignoring Plaintiff's medical needs. *See id*. at ¶ 6(e).

On June 28, 2010, Plaintiff commenced this civil rights action. On January 12, 2011, Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Plaintiff's claims are meritless and that he failed to establish the personal involvement of Defendants Artus, Wright and Johnson. *See* Dkt. No. 28 at 2, 4. Plaintiff failed to respond to the motion.

**B.   Magistrate Judge Homer's July 22, 2011 Report-Recommendation and Order**

In a July 22, 2011 Report-Recommendation and Order, Magistrate Judge Homer recommended that the Court grant in part and deny in part Defendants' motion to dismiss. *See id*. Regarding Plaintiff's allegations against Defendants Badger and Adams in relation to Plaintiff's asthma inhaler on October 26 and 28, Magistrate Judge Homer noted that an asthma condition unaccompanied by an attack or other emergent symptoms is not a sufficiently serious medical

3

condition to constitute an Eighth Amendment violation. *See id*. at 11. Magistrate Judge Homer stated that Plaintiff similarly failed to state a claim in those portions of the complaint where no facts were proffered relating to his asthma diagnosis or any complications he experienced due to the deprivation of his inhaler. *See id*. Moreover, there was no evidence that Defendants Badger and Adams were aware of Plaintiff's asthma attack or that they were deliberately indifferent to treating it. *See id*. at 12. Therefore, Magistrate Judge Homer recommended that the motion to dismiss be granted with respect to those Defendants. *See id*.

Magistrate Judge Homer recommended that the motion to dismiss with respect to Defendant Ryan's failure to bring Plaintiff his seizure medication on October 31, 2009 be denied. *See id*. at 13. Specifically, Magistrate Judge Homer found that failure to provide medication which would prevent or avert a seizure may demonstrate deliberate indifference to a serious medical condition. *See id*. at 12-13. Furthermore, Magistrate Judge Homer found that the allegation that Defendant Ryan failed to treat Plaintiff during an asthma attack on November 4, 2009, was sufficient to survive a motion to dismiss. *See id*. at 12.

On the other hand, Magistrate Judge Homer found that neither Plaintiff's letter to Defendant Wright on November 4, nor Defendant Wright's response was sufficient to establish personal involvement. *See id*. at 6. Similarly, despite the fact that Plaintiff raised several issues with Defendant Artus on November 10, Magistrate Judge Homer found that he could also be dismissed for lack of personal involvement. *See id*.

Magistrate Judge Homer found that the allegation that Defendant Smith's January 19, 2010 denial of Plaintiff's request for emergency treatment, whereupon Plaintiff suffered a seizure, was sufficient to survive a motion to dismiss. *See id*. at 12-13. Again, Magistrate Judge Homer stated that such conduct may demonstrate deliberate medical indifference. *See id*. at 13.

**C.      Plaintiff's objections to Magistrate Judge Homer's Report-Recommendation and Order**

Plaintiff objects to the dismissal of Defendants Badger and Adams. *See* Dkt. No. 31 at 4. Plaintiff asserts that they were unqualified personnel and that their rendering of medical services to Plaintiff constituted deliberate indifference. *See id*. at 5. Plaintiff also argues that they failed to provide him access to specialist care that was required for his condition. *See id*. Additionally, Plaintiff argues that they were assigned or tried to perform tasks without adequate supervision or that exceeded their training. *See id*. Next, Plaintiff claims that they were deliberately indifferent because they failed to carry out a physician's orders. *See id*. Further, Plaintiff argues that Defendant Adams failed to provide him with treatment by a physician when his medical needs called for it. *See id*.

Plaintiff also objects to the granting of the motion to dismiss as to Defendants Artus and Wright. *See id*. 6-7. Plaintiff argues that they breached their duty to operate the prison with due regard for the health and safety of each prisoner in it's custody, as required by New York State Corrections Law § 70. *See id*. Furthermore, Plaintiff argues that Defendant Artus should not have been dismissed because he failed to provide enough medical staff coverage to meet the needs of the prison population and was deliberately indifferent when he failed to provide guards with proper training for handling medical emergencies. *See id.*

In his objections, Plaintiff states that all of his medical issues rose to the level of a sufficiently serious medical condition because they had been diagnosed by a physician as requiring treatment. *See id*. at 2. Moreover, Plaintiff argues that the Court should determine which services were performed by "assistants, nurses and inmates and whether they were

5

qualified to perform them." *See id*. at 4. Plaintiff also alleges negligence and malpractice. *See id.* at 2, 8.

**D.     Defendants' objections to Magistrate Judge Homer's Report-Recommendation and Order**

Defendants object to Magistrate Judge Homer's July 22, 2011 Report-Recommendation and Order insofar as Defendant Ryan's denial of seizure medication was found to be possible grounds for an Eighth Amendment violation and insofar as Magistrate Judge Homer recommended denying the motion as to Defendant Johnson. *See* Dkt. No. 29 at 2. In regards to Defendant Ryan, Defendants argue that since Plaintiff did not allege any resulting medical harm following Defendant Ryan's failure to provide him with seizure medication, the claim should be dismissed because the harm was insufficient to establish a constitutional violation. *See id*. at 4-5.

Defendants also take issue with Magistrate Judge Homer's characterization of Plaintiff's alleged disclosure to Defendant Johnson as being an ongoing constitutional violation. *See id*. at 3. According to Defendants, only two of the five incidents that Defendant Johnson is alleged to have been made aware of constituted potential constitutional violations. *See id*. Since the Court ruled that Defendants Badger and Adams' conduct failed to meet either prong of the Eighth Amendment analysis, Defendants contend that those two incidents should not be considered as evidence of an ongoing constitutional violation. *See id*. Likewise, as mentioned above, Defendants argue that Defendant Ryan's failure to bring Plaintiff his seizure medication should not be considered as evidence of an ongoing constitutional violation because there was no allegation that the deprivation resulted in medical harm. *See id*. As further evidence that no ongoing constitutional violation existed, Defendants point to the fact that, although five months passed between the time when Plaintiff spoke to Defendant Johnson and the time when the

6

complaint was filed, no further constitutional violations were alleged to have occurred. *See id*. at 4.

### III. DISCUSSION

**A.     Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In a rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, which is deemed to include any written instrument attached to the complaint as an exhibit, any materials incorporated into it by reference, and any other documents that are integral to it. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). Moreover, the court must draw all reasonable inferences from those factual allegations in the plaintiff's favor. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quotation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to it nor incorporated by reference into the pleading. *See Mangiafico*

7

*v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).  Dismissal will only be granted by the court if it "appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief."  *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996).

So read, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim to relief is plausible on its face "when the [P]laintiff pleads fact[s] . . . that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

When a dismissal is sought against a *pro se* litigant, the court will afford the non-movant special solicitude.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and citations omitted).  The submissions of a *pro se* litigant are to be construed liberally and interpreted "to raise the strongest arguments that they suggest."  *Id.* at 475 (internal quotation and citations omitted).

**B.     Deliberate indifference to a serious medical need**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Hathaway*, 37 F.3d at 66.  More than

negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66.

The test for a deliberate indifference claim is twofold.  First, the prisoner must show that he had a sufficiently serious medical need.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  *See id*.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

"Because society does not expect that prisoners will have unqualified access to healthcare, a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quotation omitted).  Since there is no distinct litmus test, the court must consider several factors to determine whether a medical condition is sufficiently serious.  These factors include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  *Brock v. Wright*, 315 F.3d 158, 12-63 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).  The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case.  *See Smith*, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  *Chance*, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

9

"Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. *Id*. at 703. Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### *1. Defendants Badger and Adams*

Plaintiff contends that Defendant Badger was deliberately indifferent to his serious medical need when she told Plaintiff that she was tired of bringing him his asthma inhaler and that she was going to speak with Defendant Adams about allowing Plaintiff to have self-carry privileges. *See* Dkt. No. 1 at ¶ 6(a). Further, Plaintiff claims that Defendant Adams was deliberately indifferent when Defendant Adams stopped providing him with his inhaler. *See id.* at ¶ 6(f). In his July 22, 2011 Report-Recommendation and Order, Magistrate Judge Homer recommended that the Court grant Defendants' motion to dismiss as to these two Defendants because Plaintiff "failed to proffer any facts relating to his diagnosis of asthma or any complications which he had experienced as a result of not receiving his inhaler." *See* Dkt. No. 28 at 11. Additionally, Magistrate Judge Homer found that Plaintiff failed to "proffer facts that would indicate that [D]efendants Badger or Adams were aware [Plaintiff] was experiencing an asthma attack or associated serious condition, and were deliberately indifferent to treating it." *See id.* at 11-12. As such, Magistrate Judge Homer recommended that the Court find that Plaintiff failed to plead sufficient facts to establish both the objective and subjective prongs of his claim. *See id.*

As Magistrate Judge Homer correctly found, Plaintiff's asthma condition itself does not qualify as a serious medical need for the purposes of a section 1983 claim. *See Sulkowsa v. City*

10

*of New York*, 129 F. Supp. 2d 274, 292 (S.D.N.Y. 2009) (finding that, in the absence of an attack or symptoms of an attack, an asthma condition is not a sufficiently serious medical need); *see also Patterson v. Lilley*, No. 02 Civ. 6056, 2003 U.S. Dist. LEXIS 10097, *12 (S.D.N.Y. June 20, 2003) (holding that the objective component of a deliberate indifference claim is not satisfied without any allegation of discomfort or any symptoms of an emergent attack).[1]  Plaintiff did not show that Defendants Badger and Adams were deliberately indifferent because he has not alleged that either of them had knowledge of any pain, discomfort, or that his condition was "fast-degenerating" or "life-threatening." *Patterson*, 2003 U.S. Dist. LEXIS 10097, at *14.  As such, the Court finds that Plaintiff's claims that Defendants Badger and Adams were deliberately indifferent for failing to provide him with his inhaler meet neither the objective nor subjective prongs of the deliberate medical indifference analysis and, therefore, were properly dismissed by Magistrate Judge Homer.  Furthermore, Defendant Adams' decision to discontinue Plaintiff's inhaler represents a mere difference of opinion over a matter of medical judgment, which fails to rise to the level of deliberate indifference to a serious medical need. *See Colby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972).

Based on the foregoing, the Court accepts Magistrate Judge Homer's recommendation and grants Defendants' motion to dismiss Defendants Badger and Adams.

### *2. Defendant Ryan*

Plaintiff alleges that, on November 4, 2009, Defendant Ryan failed to treat Plaintiff while he was experiencing an asthma attack.  *See* Dkt. No. 1 at ¶ 6(b).  Further, Plaintiff claims that

---

[1] The medical records that Plaintiff submitted to the Court repeatedly classify his asthma condition as "Mild."  *See* Dkt. No. 23 at 19, 24.

11

Defendant Ryan, on October 31, 2009, failed to give him his morning seizure medication. *See id.* at ¶ 6(c). In his July 22, 2011 Report-Recommendation and Order, Magistrate Judge Homer recommended that the Court deny Defendants' motion to dismiss as to both of these claims against Defendant Ryan. *See* Dkt. No. 28 at 11-13.

As courts in this Circuit have recognized, withholding asthma medication from an inmate while he is suffering an asthma attack is indicative of deliberate medical indifference to a serious medical need. *See Ennis v. Davies*, No. 87 Civ. 1465 (LMN), 1990 U.S. Dist. LEXIS 10500, *7 (S.D.N.Y. Aug. 14, 1990); *see also Patterson*, 2003 U.S. Dist. LEXIS 10097, at *12 (holding that "the existence of the condition [of asthma] is distinct from the situation in which an inmate is suffering an actual attack"). As such, the Court finds that Magistrate Judge Homer correctly recommended that the Court deny Defendants' motion to dismiss with respect to her alleged failure to treat Plaintiff during an asthma attack.

With respect to Defendant Ryan's alleged failure to provide Plaintiff with seizure medication, however, the court disagrees with the Report-Recommendation and Order and finds that Defendants' motion to dismiss should be granted. Plaintiff failed to allege that he suffered harm as a result of Defendant Ryan's failure to give him one dose of his seizure medication. *See Patterson*, 2003 U.S. Dist. LEXIS 10097, at *13 n.3 (finding that the defendant could only be found to have been deliberately indifferent for an "existing, serious medical condition, not a speculative, future medical injury"); *see also Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003) (holding that, when determining if there has been deliberate medical indifference, the court can consider the severity of a temporary delay in treatment where the prisoner is receiving

appropriate, on-going treatment for his condition).[2]  In fact, Plaintiff alleges that Defendant Ryan failed to give him a single dose of his seizure medication on October 31, 2009, but that he did not suffer a seizure until January 19, 2010.  Plaintiff does not allege that the missed dose of medication is what caused his seizure nearly three-months later.  These allegations are insufficient to meet the deliberate indifference standard.  *See Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (finding insufficient evidence to establish a constitutional wrong where the plaintiff's hypertension medication was not refilled for several days on one occasion); *Smith*, 316 F.3d at 187-89 (finding no constitutional violation because of two alleged episodes of missed HIV medication where the plaintiff failed to present evidence of permanent or on-going harm or an unreasonable risk of future harms stemming from the missed doses); *see also Bellotto v. County of Orange*, 248 Fed. Appx. 232, 237 (2d Cir. 2007).

Since Plaintiff has failed to allege any harm resulting from one missed dose of his seizure medication, the Court finds that Plaintiff has failed to meet either prong of this claim against Defendant Ryan.  Therefore, the Court rejects Magistrate Judge Homer's recommendation to deny Defendants' motion as to the allegation regarding Defendant Ryan's denial of seizure medication to Plaintiff on October 31, 2009.  The Court, however, accepts Magistrate Judge Homer's recommendation to deny Defendants' motion as to Defendant Ryan's alleged failure to treat Plaintiff while he was suffering from an asthma attack.

---

[2] The facts here, where Plaintiff alleges that he was deprived of a single dose of his seizure medication, can be distinguished from *Thompson v. Carter* (the authority relied on in Magistrate Judge Homer's Report-Recommendation), where the plaintiff alleged a continued deprivation of medication for a similar condition.  *See Thompson v. Carter*, 284 F.3d 411, 414 (2d Cir. 2002) (noting that "Thompson submitted an affidavit to the court in which he claimed that he suffered from Jacksonian Epilepsy and that Great Meadow personnel *continued* to deny him his medications" (emphasis added)).

### *3. Defendant Smith*

In his complaint, Plaintiff alleges that, on January 19, 2010, Defendant Smith denied his request for "emergency sick call" and that, thereafter, he suffered a seizure. *See* Dkt. No. 1 at ¶ 6(d). In his July 22, 2011 Report-Recommendation and Order, Magistrate Judge Homer recommended that the Court find that this allegation is sufficient to survive Defendants' motion to dismiss. *See* Dkt. No. 28 at 12-13.

Although Plaintiff did not provide the Court with much guidance regarding this claim, in light of the deference due to *pro se* plaintiff's, the Court finds that Magistrate Judge Homer correctly recommended that the Court find that this claim is sufficient to withstand Defendants' motion to dismiss. Numerous courts throughout this Circuit have found that a denial of medical care in a similar situation to that presented here is sufficient to survive motion to dismiss review. *See Boomer v. Lanigan*, No. 00 Civ. 5540, 2002 WL 31413804, *7 (S.D.N.Y. Oct. 25, 2002) (holding that "[i]gnoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs, particularly when it is undisputed that the inmate suffered a seizure after making those requests"); *Gonzalez v. Jones*, No. 07 Civ. 2126, 2010 WL 533856, *15 (S.D.N.Y. Feb. 11, 2010) (holding that "[t]here is no dispute that severe hypoglycemia, resulting in a diabetic seizure, constitutes a serious medical condition"); *see also Kelly v. Alameda County Sheriff Dep't*, No. C-96-0309, 1996 U.S. Dist. LEXIS 15202, *6 (N.D. Cal. Oct. 7, 1996) (holding that "failure to respond to plaintiff's statements concerning the possible onset of a seizure could well result in further significant injury or the unnecessary and wanton infliction of pain"). Liberally construed, Plaintiff's claim against Defendant Smith is more than a mere disagreement regarding the appropriate medical treatment, but a plausible claim

that Defendant Smith was deliberately indifferent to his serious medical needs. *See, e.g., Bennett v. Hunter*, No. 9:02-CV-1365, 2006 WL 1174309, *4 (N.D.N.Y. May 1, 2006).

Construing the facts in the light most favorable to Plaintiff, the allegation regarding Defendant Smith's denial of Plaintiff's request for emergency treatment is sufficient to withstand Defendants' motion to dismiss. *See Estelle*, 429 U.S. at 104-105. As such, the Court accepts Magistrate Judge Homer's recommendation as to this claim.

**C.    Personal Involvement**

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation and citations omitted). "'[W]hen monetary damages are sought under § 1983, the [] doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id.* (quotation omitted). There is a sufficient showing of personal responsibility of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).[3]

---

[3] The Court notes that Plaintiff objects to Magistrate Judge Homer's dismissal of Defendants Artus and Wright, arguing that they violated their duty under New York Corrections Law § 70. *See* Dkt. No. 31 at 6-7. This, however, constitutes a new legal argument that was absent in Plaintiff's complaint and, therefore, will not be considered. *See, e.g., Abu-Nassar v.*

(continued...)

15

*1. Defendants Artus*

In his complaint, the only information Plaintiff provided concerning Defendant Artus' personal involvement is that Plaintiff addressed his issues to Defendant Artus and asked him for help, but the issues were allegedly never resolved. *See* Dkt. No. 1 at 7. Magistrate Judge Homer recommended that the Court find that Plaintiff's act of writing a complaint letter to Defendant Artus and Defendant Artus' receipt of the letter without personally investigating or acting on the letter or grievance is insufficient to establish personal involvement. *See* Dkt. No. 28 at 6-7 (citations omitted).

As Magistrate Judge Homer correctly found, Plaintiff's allegations against Defendant Artus are insufficient to establish his personal involvement. *See Smart v. Goord*, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) (holding that the "Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [the plaintiff]"); *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350 (SAS), 2008 U.S. Dist. LEXIS 70080, *26 (S.D.N.Y. Sept. 17, 2008) (holding that "[m]ere notice of alleged wrongdoing is insufficient to establish a supervisor's or administrator'[s] personal involvement"); *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (holding that "[w]hile mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint"); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (citations

---

[3](...continued)
*Elders Futures, Inc*., No. 88 Civ. 7906, 1994 WL 445638, *4 n.2 (S.D.N.Y. Aug. 17, 1994) (holding that arguments presented for the first time in a party's objections to a report and recommendation are untimely, and consideration of such claims would "undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments").

omitted). Since Plaintiff's only allegation against Defendant Artus is that he did not act in response to his complaint letter, Plaintiff has failed to allege sufficient facts to establish that Defendant Artus was personally involved in any alleged constitutional violations.

As such, the Court finds that Magistrate Judge Homer properly recommended granting Defendants' motion to dismiss as to Defendant Artus.

### *2. Defendant Wright*

In his complaint, Plaintiff claims that Defendant Wright violated his rights when he replied to Plaintiff's medical complaint by informing Plaintiff that he should raise the issues contained in his letter with the medical staff through the sick-call procedure. *See* Dkt. No. 1 at ¶ 6(h). Magistrate Judge Homer recommended that the Court find that this claim is insufficient to establish Defendant Wright's personal involvement because inmates do not enjoy a constitutional right to an internal investigation of any particular nature, extent, or duration; and, therefore, it was appropriate/permissible for Defendant Wright to refer Plaintiff's complaint to the appropriate person who would address his claims. *See* Dkt. No. 28 at 7-8 (citations omitted). As such, Magistrate Judge Homer recommended that the Court find that this delegation of responsibility is insufficient to establish Defendant Wright's personal involvement. *See id.* at 8.

A supervisory official's failure to investigate a letter of protest written by an inmate is insufficient to show personal involvement. *See Harnett*, 538 F. Supp. 2d at 524 (citations omitted). Additionally, personal involvement has not been shown where a supervisor's only response to an inmate's complaint is to refer the complaint to the appropriate staff for investigation. *See id.* (citations omitted); *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (finding no personal involvement where "the only involvement of the supervisory official is

17

to refer the inmate's complaint to the appropriate staff for investigation" (citing *Ortiz-Rodriquez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007)). In light of this authority, it is clear that Magistrate Judge Homer correctly found that neither Plaintiff's letter to Defendant Wright describing his problems with the medical staff at Clinton C.F., nor Defendant Wright's reply that Plaintiff should address his issues to "the health care staff using the existing sick call procedure," was sufficient to establish his personal involvement. *See* Dkt. No. 1 at ¶ 6(h).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Defendant Wright.

### *3. Defendant Johnson*

Plaintiff contends that, on January 20, 2010, he addressed his concerns regarding the incidents discussed above with Defendant Johnson. *See* Dkt. No. 1 at ¶ 6(e). Plaintiff claims that Defendant Johnson merely "justif[ied] the[ir] action[s] and ignore[d] my serious medical needs." *See id.* Magistrate Judge Homer recommended that the Court find Defendants' "alleged repeated failures at providing such services constituted an ongoing violation of which [Defendant] Johnson was apprised. Construing the facts in the light most favorable to [Plaintiff], his account of [Defendant] Johnson both wrongfully justifying potentially unconstitutional care and ignoring his complaints plausibly states grossly negligent supervision of subordinates committing wrongful acts." *See* Dkt. No. 28 at 9.

In *McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004), the Second Circuit stated that it was "questionable" whether the adjudicator's rejection of a grievance would make him liable for the conduct of which the inmate complained. However, the court also stated that the supervisory

defendant would be retained in the case because of his supervisory responsibility over the medical program at the facility. *See id.* The court stated that when allegations of improper denial of medical treatment "come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." *Id.* at 438; *see also Harnett*, 538 F. Supp. 2d at 524-25 (interpreting the *McKenna* holding to mean that a supervisory official will be found to be personally involved in the alleged violation if he is confronted with an ongoing violation which he could have remedied, but not if the official is confronted with a violation that has already occurred and is not ongoing) (citations omitted).

In the present matter, Plaintiff alleges that he complained to Defendant Johnson of several incidents which he claims violated his constitutional rights. *See* Dkt. No. 1 at ¶¶ 6(a)-(f). These complaints included (1) Defendant Badger informing Plaintiff that she was tired of continually bringing him his asthma inhaler; (2) Defendant Adams' termination of Plaintiff's inhaler prescription; (3) Defendant Ryan's failure to treat Plaintiff while he was having an asthma attack; (4) Defendant Ryan's failure to provide Plaintiff with his morning seizure medication; and (5) Defendant Smith's denial of Plaintiff's request for emergency treatment right before he suffered a seizure. *See id.* As Magistrate Judge Homer correctly found, construing the facts in Plaintiff's favor, Plaintiff has plausibly alleged conduct that could be deemed "grossly negligent supervision of subordinates committing wrongful acts." *See* Dkt. No. 28 at 9.

As such, the Court denies Defendants' motion to dismiss as to Plaintiff's claims against Defendant Johnson.

## IV. CONCLUSION

After carefully considering Magistrate Judge Homer's Report-Recommendation and Order, the parties' objections thereto and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Homer's July 22, 2011 Report-Recommendation and Order is **ADOPTED** in part and **REJECTED** in part, as set forth in this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part, as set forth in this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: December 19, 2011
        Albany, New York

Mae A. D'Agostino
U.S. District Judge