**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ANDRE YOUNGBLOOD,

                              Plaintiff,

              v.                                                    No. 10-CV-752
                                                                        (MAD/CFH)
V. JOHNSON, Head Nurse Administrator,
Clinton Correctional Facility; R.N. SMITH;
CATHY RYAN, Nurse, Clinton Correctional
Facility,

                              Defendants.[1]
_____

**APPEARANCES:**                                   **OF COUNSEL:**

ANDRE YOUNGBLOOD
Plaintiff Pro Se
131-09 115 Pl.
Queens, NY 11420


HON. ERIC T. SCHNEIDERMAN                LAURA A. SPRAGUE, ESQ.
Attorney General for the                          Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341


**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

                    **REPORT-RECOMMENDATION AND ORDER**[2]

      Plaintiff pro se Andre Youngblood ("Youngblood"), a former inmate in the custody of the

_____

      [1]  By Decision and Order dated December 19, 2011, the Court dismissed
defendants Badger, Adams, Artus, and Wright from this action.  Dkt. No. 34 at 11, 17–18.

      [2]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

New York State Department of Correctional and Community Supervision ("DOCCS"), brings

this action pursuant to 42 U.S.C. § 1983 alleging that defendants, three DOCCS

employees, violated his constitutional rights under the Eighth Amendment.  Compl. (Dkt.

No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R.

Civ. P. 56.  Dkt. No. 65.  Youngblood does not oppose this motion.  For the following

reasons, it is recommended that defendants' motion be granted.


## I.  Failure to Respond

Youngblood did not oppose defendant's motion although the Court notified him of his

response deadline.  Dkt. No. 66.  "Summary judgment should not be entered by default

against a pro se plaintiff who has not been given any notice that failure to respond will be

deemed a default."  Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Defendants

provided notice in their motion papers as required by the Second Circuit and as normally

done by the office of defendants' counsel.  Id.; Dkt. No. 65-1.  Despite the notices,

Youngblood failed to respond.

"The fact that there has been no response to a summary judgment motion does not . . .

mean that the motion is to be granted automatically."  Champion, 76 F.3d at 486.  Even in

the absence of a response, defendants are entitled to judgment only if the material facts

demonstrate their entitlement to judgment as a matter of law.  Id.; FED. R. CIV. P. 56(c).  "A

verified complaint is to be treated as an affidavit . . . and therefore will be considered in

determining whether material issues of fact exist . . . ."  Colon v. Coughlin, 58 F.3d 865, 872

(2d Cir. 1995) (citations omitted).  The facts set forth in defendants' Rule 7.1 Statement of

Material Facts (Dkt. No. 65-2) [hereinafter "Defs.' Statement"] are accepted as true as to

those facts that are not disputed in Youngblood's complaint.  N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

## II. Background

The specific facts of the case are set forth in the Report-Recommendation and Order filed July 22, 2011, familiarity with which is assumed.  Dkt. No. 28.  The Court dismissed all of Youngblood's claims except Eighth Amendment medical indifference claims against defendants Johnson, Ryan, and Smith.  Dkt. No. 34.  The facts discussed will be those relevant to the claims herein remaining.  Those claims occurred during Youngblood's incarceration at Clinton Correctional Facility ("Clinton").

### A. Asthma Attack

On November 3, 2009, Youngblood sent a letter to non-party Dr. Adams regarding DOCCS's failure to renew his inhaler prescription.  Defs.' Statement ¶ 6; Dkt. No. 65-8 at 1.

On November 4, 2009, Youngblood had his first acute asthma attack at Clinton.  Defs.' Statement ¶ 2; Dkt. No. 65-5 at 42–43.  Youngblood was in his cell at night when all of a sudden he could not breathe.  Youngblood Dep. (Dkt. No. 65-5) at 44:21–24.[3]  He was evaluated at emergency sick call for an acute asthma attack.  Defs.' Statement ¶ 4; Youngblood Dep. at 44:25–45:2; Dkt. No. 65-7 at 2.  Youngblood took Flovent before going to emergency sick call.  Youngblood Dep. at 45:13–15.  According to Youngblood,

---

[3]  The page numbers following "Youngblood Dep." refer to the pagination of the individual transcripts, not the header numbers generated by CM/ECF.

defendant Nurse Ryan evaluated him and determined that there was no emergency as he was in no apparent distress, spoke without shortness of breath, had clear lungs and vital signs within normal limits, and did not require a breathing treatment; however, Youngblood disagreed with that assessment.  Compl. ¶ 6(b); Youngblood Dep. at 44:17–46:1; <u>see</u> Defs.' Statement ¶ 5.  Youngblood took Albuterol after the attack.  Youngblood Dep. at 46:24–47:1–3.

Youngblood contends that Ryan should have administered medication to him through a nebulizer.  Youngblood Dep. at 48:4–12.  Ryan maintains that she was not the nurse on duty as the provider signature and handwriting on the medical records do not belong to Ryan.  Ryan Decl. (Dkt. No. 65-13) ¶ 6; Dkt. No. 65-6 at 50.  However, those medical records merely document when and which medications were administered to Youngblood. Dkt. No. 65-6 at 50.  Ryan also did not see Youngblood for a follow up visit on November 6, 2009, when Youngblood requested a self-carry inhaler.  Ryan Decl. ¶ 7; Dkt. No. 65-6 at 15.[4]

On November 17, 2009, defendant Johnson, a physician, sent Youngblood a letter advising Youngblood that he would see Dr. Adams about his medical issues that week. Defs.' Statement ¶ 7; Johnson Decl. (Dkt. No. 65-15) ¶¶ 1, 6; Dkt. Nos. 65-8 at 3, 65-16. On November 18, 2009, Dr. Adams saw Youngblood and ordered medications to address Youngblood's medical issues.  Defs.' Statement ¶ 8; Dkt. No. 65-7 at 2, 8.

---

[4] The medical records show that non-party Nurse Blaise saw Youngblood on November 6, 2012.  Dkt. No. 65-6 at 15.

4

### B. Seizures

Youngblood has seizures approximately three to four times a year.[5]  Defs.' Statement ¶ 9; Dkt. No. 65-5 at 18.  Youngblood is aware that even with regular medication, he can have seizures.  Defs.' Statement ¶ 10; Youngblood Dep. at 18:19–19:7.  Youngblood testified that a seizure soon follows after he gets a severe headache.  Youngblood Dep. at 20:7–13.

Prior to January 19, 2010, Youngblood missed a dose of medication on October 31, 2009 because he refused his medication.[6]  Dkt. No. 65-7 at 25.  On January 19, 2010, Youngblood had a seizure.  Defs.' Statement ¶¶ 11, 13.  Just prior to suffering his seizure, Youngblood claims he advised defendant Nurse Smith that he had missed two doses of his medication and did not feel well.  Defs.' Statement ¶ 11; Youngblood Dep. at 29:19–21, 30:18–31:9.  Smith maintains that Youngblood approached her with a steady gait, noted no apparent signs of neurological deficit, and took his medications without issue.[7]  Smith Decl. (Dkt. No. 65-14) ¶ 6.  Smith asked Youngblood if he felt he needed emergency treatment, Youngblood answered in the affirmative, and Smith advised Youngblood to wait for emergency sick call as there was another emergency at the time.  Defs.' Statement ¶ 11;

---

[5]  Youngblood submitted medical records indicating that he suffered seizures during the first half of 2009.  See, e.g., Dkt. No. 21 at 1, 5, 8, 26, 28–29, 62.

[6]  During the morning medication run, a correction officer told defendant Smith that Youngblood was in the yard.  Dkt. No. 65-7 at 25.  Smith told the officer to tell Youngblood that if he wants his medicine, he would have to go to the hospital for it.  Id.  Youngblood never went to the hospital for his medication.  Id.

[7]  Smith does not specify which medications she administered to Youngblood.  A treatment and medication record indicates that in January 2010, Youngblood was taking Depakote and Tegretol.  Dkt. No. 65-6 at 52.

Smith Decl. ¶¶ 7–8; Dkt. No. 65-7 at 26. Youngblood alleged that Smith denied his request for emergency treatment. Compl. ¶ 6(d). As soon as Youngblood sat down to wait, he had a seizure. Defs.' Statement ¶ 12; Youngblood Dep. at 33:15–16. Johnson never advised Smith that he was going to have a seizure. Defs.' Statement ¶ 14; Smith Decl. ¶ 10; Youngblood Dep. at 33:23–34:2; Dkt. No. 65-7 at 26.

## C. Complaints

Johnson is not a Nurse Administrator and does not directly supervise nurses. Defs.' Statement ¶ 18; Johnson Decl. ¶ 5. Rather, Johnson supervises physicians, mid-level providers, and direct patient care. Johnson Decl. ¶¶ 1–2. Johnson's sole contact with Youngblood was the November 17, 2009 letter sent to Youngblood, as mentioned above, and a visit on January 20, 2010, following Youngblood's seizure on January 19, 2010. Defs.' Statement ¶ 15; Dkt. No. 65-7 at 17; Dkt. No. 65-8 at 3.

On January 20, 2010, Youngblood discussed the medication runs with Johnson. Defs.' Statement ¶ 16; Dkt. No. 65-5 at 49–50. Youngblood informed Johnson that he often slept through the medication runs and wanted the nursing staff to take full responsibility for ensuring that he took his medication. Johnson Decl. ¶¶ 9–10; Dkt. No. 65-17. Youngblood advised Johnson that he was placed on one-to-one medication administration because he would forget to self-administer his medication. Johnson Decl. ¶ 9; Dkt. No. 65-17. Youngblood then became argumentative and disruptive. Defs.' Statement ¶ 17; Johnson Decl. ¶ 10; Dkt. Nos. 65-17, 65-5 at 49–50, 65-7 at 17, 21. Non-party Rasco, a correction officer, had to terminate the interview and escort Youngblood back to his cell. Johnson Decl. ¶ 11; Dkt. No. 65-7 at 21. Youngblood contends that on Johnson justified defendants'

actions and ignored his complaints.  Compl. ¶ 6(e).

Johnson attested that the nursing staff cannot take full responsibility for ensuring that Youngblood took his medication because it is not possible in an institutional setting. Johnson Decl. ¶ 10.  Johnson further attested that medication runs are clearly announced when the nurse arrives on the block and the inmate is responsible for receiving his medication at the cell door.  Id.

Because Youngblood had a seizure the day before Johnson's exam, Johnson ordered a blood test to measure Youngblood's medication levels.[8]  Johnson Decl. ¶ 13. Youngblood's vital signs were stable and he was discharged back to the general population with a follow up appointment with Dr. Adams.  Id. ¶ 13; Dkt. No. 65-16.

## D.  Youngblood's Residential Address

The Court's mail sent to Youngblood's Queens, New York address was returned as undeliverable on October 11, November 5, and November 26 of 2012.  Dkt. Nos. 63, 64, 67.  Youngblood has not provided the Court with an updated address.

## III.  Discussion

Youngblood contends that defendants violated his Eighth Amendment rights by exhibiting medical indifference against him when:  (1) defendant Ryan, on November 4, 2009, failed to treat him for an asthma attack; (2) defendant Smith, on January 19, 2010, denied his request for emergency sick call, after which he suffered a seizure; and

---

[8]  The record contains the blood test report unaccompanied by any medical opinion or comment.  Dkt. No. 65-6 at 28.

(3) defendant Johnson, based on his conversation with her on January 20, 2010, justified the actions of Ryan and Smith and ignored his complaints. Dkt. No. 34 at 11–12, 14, 18–19. Defendants move for summary judgment, arguing that Youngblood's claims are without merit and the complaint should be dismissed in its entirety. Defs.' Mem. of Law (Dkt. No. 65-3) at 3.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247–48.


## B.  Personal Involvement

Defendants argue that Youngblood failed to establish the personal involvement of Johnson and Ryan.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citing <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986)).[9]

### 1.  Dr. Johnson

Youngblood contends that on January 20, 2010, he approached Johnson with all of his

---

[9]  Various courts in the Second Circuit have postulated how, if at all, the <u>Iqbal</u> decision affected the five <u>Colon</u> factors which were traditionally used to determine personal involvement.  <u>Pearce v. Estate of Longo</u>, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), <u>rev'd in part on other grounds sub nom.</u>, <u>Pearce v. Labella</u>, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated <u>Iqbal's</u> impact on the five <u>Colon</u> factors); <u>Kleehammer v. Monroe Cnty.</u>, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third <u>Colon</u> categories pass <u>Iqbal's</u> muster . . . ."); <u>D'Olimpio v. Crisafi</u>, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that <u>Iqbal</u> eliminated <u>Colon's</u> personal involvement standard).

medical complaints regarding the three named defendants, all of whom were nurses, and that Johnson justified these defendants' actions and ignored his complaints.  Despite Youngblood's conclusory and unsupported allegations, Johnson did not supervise presently named defendants nurses Ryan and Smith or previously dismissed defendant Nurse Badger.  Johnson is a physician who supervises other physicians and mid-level providers, not nurses.  There is nothing in the record to indicate Johnson had any supervisory authority over defendants, instead the record evidence indicates the opposite is true.  See, e.g., Gibson v. Comm'r of Mental Health, No. 04-CV-4350 (SAS), 2008 WL 4276208, at *10 (S.D.N.Y. Sept. 17, 2008) (holding that defendant, an executive director responsible for the overall operation of a psychiatric center and who did not supervise treatment assistants, nurses, unit chiefs, or psychiatrists, was not personally involved in plaintiff's claims).[10] Thus, Johnson was not personally involved in the alleged constitutional deprivations through supervision, much less grossly negligent supervision.

Youngblood also failed to establish Johnson's personal involvement through the remaining factors.   First, the record is devoid of any facts supporting that Johnson directly failed to provide Youngblood with medical care or attention.  Second, it cannot be said that Johnson knew of and failed to remedy wrongful conduct or exhibited deliberate indifference to Youngblood's medical needs because after being informed of Youngblood's need for asthma medication, Johnson directed Dr. Adams to attend to Youngblood's asthma issues. Johnson also met with Youngblood to discuss the seizure incident.  Third, Youngblood does not allege that Johnson created any policy or custom under which unconstitutional practices

---

[10]  All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

occurred.  Therefore, Youngblood has failed to establish Johnson's personal involvement for purposes of his § 1983 claim.

Accordingly, defendants' motion on this ground should be granted.

### 2.  Nurse Ryan

Youngblood contends that Ryan was personally involved in the alleged constitutional deprivations by directly failing to treat his asthma attack.  However, Ryan attested that she was not the nurse on duty who attended to Youngblood on November 4, 2009 and the medical records show that Ryan did not attend to Youngblood during a follow-up appointment on November 6, 2009.  Youngblood made no objections to these assertions. Whether or not Ryan was the treating nurse, Youngblood was evaluated at emergency sick call and a determination of his conditions was made.  Thus, assuming Ryan attended to Youngblood, the record is devoid of any showing that Ryan was deliberately indifferent to Youngblood's medical requests.  Moreover, Youngblood does not allege that Ryan was informed of a violation through a report or appeal and failed to remedy it, grossly negligent in supervising subordinates, or created a policy or custom that allowed unconstitutional practices to occur.  Therefore, Youngblood has failed to establish Ryan's personal involvement.

Accordingly, defendants' motion on this ground should be granted.

### C.  Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  Eighth Amendment obligations include the duty to

protect prisoners from other known harms.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 829 (1970);

<u>Matthews v. Armitage</u>, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted).  It also

includes the provision of medical care.  <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir.

1994).  The test for a § 1983 claim is twofold.  First, the prisoner must show that the

condition to which he was exposed was sufficiently serious.  <u>Farmer</u>, 511 U.S. at 834.

Second, the prisoner must show that the prison official demonstrated deliberate indifference

by having knowledge of the risk and failing to take measures to avoid the harm.  <u>Id.</u>

    "'Because society does not expect that prisoners will have unqualified access to

healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to

state a cognizable claim.  <u>Smith v. Carpenter</u>, 316 F.3d 178, 184 (2d Cir. 2003) (quoting

<u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)).  Because there is no distinct litmus test, a

serious medical condition is determined by factors such as "(1) whether a reasonable doctor

or patient would perceive the medical need in question as 'important and worthy of

comment or treatment,' (2) whether the medical condition significantly affects daily

activities, and (3) the existence of chronic and substantial pain."  <u>Brock v. Wright</u>, 315 F.3d

158, 162–63 (2d Cir. 2003) (citing <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998)).

The severity of the denial of care should also be judged within the context of the

surrounding facts and circumstances of the case.  <u>Smith</u>, 316 F.3d at 185.

    Deliberate indifference requires the prisoner "to prove that the prison official knew of

and disregarded the prisoner's serious medical needs."  <u>Chance</u>, 143 F.3d at 702.  "[P]rison

officials who actually knew of a substantial risk to inmate health or safety may be found free

from liability if they responded reasonably to the risk, even if the harm ultimately was not

averted."  <u>Farmer</u>, 511 U.S. at 844.  Thus, prison officials must be "intentionally denying or

13

delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Hence, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds, 151 F. Supp. 2d at 312.

### 1. Asthma Attack

An asthma condition alone, without onset of an asthma attack or any other emergent symptoms, lacks the requisite seriousness required for an Eighth Amendment violation. See Patterson v. Lilley, No. 02-CV-6056 (NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) (Dkt. No. 65-10) (concluding that an inmate's request for asthma medication without alleging any symptoms of an emergent attack to the medical staff did not satisfy the objective prong); Sulkowska v. City of New York, 129 F. Supp. 2d 274, 292 (S.D.N.Y. 2001) (granting summary judgment because the pretrial detainee, who "neither complained of an asthma attack, nor . . . [presented with] symptoms of such an attack," was not suffering from a serious medical condition); see also Oliver v. Deen, 77 F.3d 156, 160–61 (7th Cir. 1996) (holding that a person suffering from mild case of asthma had not established the objective prong of the Eighth Amendment analysis).

In this case, Youngblood has failed to satisfy the objective prong. Youngblood claims he had an asthma attack on November 4, 2009. However, Youngblood's treating nurse noted that Youngblood was in no apparent distress, spoke without shortness of breath, had clear lungs and vital signs within normal limits, and did not require a nebulizer. In short,

based on Youngblood's appearance and the results of several tests, the nurse concluded that Youngblood did not have an asthma attack.  As such, Youngblood did not suffer from a sufficiently serious medical condition on November 4, 2009.

Even assuming that Youngblood did suffer such an attack, Youngblood also failed to establish the subjective prong of his medical indifference claims against Ryan and Johnson. First, despite Youngblood's conclusory allegations, Ryan maintains that she was not the nurse on duty when Youngblood experienced an asthma attack.  Second, the record is devoid of facts indicating that Ryan knew of and disregarded Youngblood's serious medical needs, Chance, 143 F.3d at  702, or that Ryan intentionally denied or delayed Youngblood access to medical care.  Estelle, 429 U.S. at 104.  Instead, the record indicates Youngblood was promptly evaluated by medical staff.  Third, while Youngblood contends that he had an asthma attack and should have been treated with a nebulizer, this amounts to a mere disagreement over medication and diagnosis, which is insufficient to state an Eighth Amendment claim.  Sonds, 151 F. Supp. 2d at 312.  Further, Youngblood is entitled to reasonable medical care but not care of his choice.  Chance, 143 F.3d at 702.  As for Johnson, after learning of Youngblood's asthma attack, Johnson notified Youngblood by letter that Dr. Adams would evaluate his asthma conditions and Dr. Adams saw Youngblood one day later.  Johnson's actions in immediately contacting Youngblood and arranging for an appointment, which occurred one day later, belie Youngblood's unsupported contentions that Johnson was deliberately indifferent towards Youngblood's asthmatic problems. Accordingly, Youngblood has failed to establish the subjective prong of a deliberate indifference claim against Ryan and Youngblood.  Therefore, Youngblood's Eighth Amendment claims against both Ryan and Johnson should be dismissed.

15

Accordingly, defendants' motion on this ground should be granted.

### 2. Seizure

Seizure conditions, namely epilepsy, constitute a serious medical condition. Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (reversing and remanding decision to dismiss case whereupon inmate "claimed that he suffered from Jacksonian epilepsy and that defendants had denied him needed medication. These allegations suggest that [the inmate] may have a legitimate claim of deliberate indifference to a serious medical condition."). Furthermore, allegations of a denial of medication or medical attention which would prevent or avert such seizures presents a plausible claim upon which relief may be granted. Id.

Here, Youngblood has satisfied the objective prong. On January 19, 2010, Youngblood sought medical attention because he did not feel well. While Youngblood waited to receive emergency care, he suffered a seizure, which constitutes a serious medical condition. Thompson, 284 F.3d at 419; see also Boomer v. Lanigan, No. 00-CV-5540, 2002 WL 31413804, at *7 (S.D.N.Y. Oct. 25, 2002) (Dkt. No. 65-11) ("Ignoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs . . . .").

However, Youngblood failed to satisfy the subjective prong. First, Smith attested that Youngblood did not approach her with signs of neurological deficit. Second, despite Youngblood's testimony that he knows when a seizure will happen because he first suffers from a severe headache, Youngblood never told Smith that the onset of a seizure was imminent. Kelly v. Alameda Cnty. Sheriff Dep't, No. C-96-0309 (EFL), 1996 WL 590597, at

16

*15 (N.D.Cal. Oct. 7, 1996) (Dkt. No. 65-12) ("fail[ing] to respond to plaintiff's statements concerning the possible onset of a seizure could well result in further significant injury or the unnecessary and wanton infliction of pain"). Accordingly, Smith had no knowledge that Youngblood was about to have a seizure or was in danger, thus negating Youngblood's contention of Smith's deliberate indifference. Third, contrary to Youngblood's conclusory allegations, Smith honored Youngblood's request for medical care by asking him to wait for emergency sick call as there was another emergency at the time. Thus, it cannot be said that Smith knew of and disregarded Youngblood's serious medical needs and any allegations of delay or interference with treatment was not intentional given the multiple medical crises and need to triage care. Chance, 143 F.3d at 702. Fourth, the record shows that Youngblood regularly missed taking his medication because he failed to be present and receive the medication during the medication runs. Thus, any alleged delay or interference with his treatment attributed to the missed medication serving as the triggers for his seizure on January 19, 2010 was due to Youngblood's own actions. Youngblood's autonomous decisions to skip his medication cannot now be blamed on medical staff and transformed into an Eighth Amendment claim. Therefore, Youngblood has failed to establish the subjective prong of his Eighth Amendment claim against Smith.

Youngblood's claim against Johnson must also fail due to his inability to satisfy the subjective prong. Johnson met with Youngblood to discuss the seizure incident on the day after the incident. Such an immediate response negates any allegations of delay in receiving medical attention. Youngblood advised Johnson that the nursing staff should ensure that he received his medication, even if he is not awake or present during the medication runs. However, Johnson attested that medication runs are clearly announced

17

and inmates are responsible for being present to receive the medication.  "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons."  Sonds, 151 F. Supp. 2d at 311 (citing Church v. Hegstrom, 416 F.2d 449, 450–51 (2d Cir. 1969)).  Thus, Youngblood's disagreement with Johnson on how he should be administered his medication does not amount to a constitutional deprivation.  Moreover, after Youngblood's seizure incident, Johnson ran a battery of tests, determined that it was proper to return Youngblood to the general population, and scheduled Youngblood with a follow-up appointment with Dr. Adams.  Therefore, the record belies any allegation that Johnson intended to deny or delay Youngblood's access to medical treatment.  Estelle, 429 U.S. at 104.  For such reasons, Youngblood has failed to establish the subjective prong of his Eighth Amendment claim against Johnson.  Youngblood's medical indifference claims against Smith and Johnson should be dismissed.

Accordingly, defendants' motion on this ground should be granted.


### D.  Qualified Immunity

Defendants claim that even if Youngblood's constitutional claims are substantiated, they are nevertheless entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official

18

would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be addressed with respect to Youngblood's Eighth Amendment claims because, as discussed supra, it has not been shown that defendants violated Youngblood's Eighth Amendment rights.

Accordingly, it is recommended, in the alternative, that defendants' motion on this ground be granted and Youngblood's complaint be dismissed.


### E.  Failure to Prosecute

Federal Rules of Civil Procedure 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedures] or a court order . . . ." FED. R. CIV. P. 41(b); see Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962); MTV Networks v. Lane, 998 F. Supp. 390, 393 (S.D.N.Y. 1998); see also N.D.N.Y.L.R. 41.2(b).

Since a Rule 41(b) dismissal is a "harsh remedy . . . [it] is appropriate only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citations omitted). Furthermore, where the plaintiff is pro se, "courts 'should be especially hesitant to dismiss

for procedural deficiencies. . . .'" <u>Spencer v. Doe</u>, 139 F.3d 107, 112 (2d Cir. 1998) (quoting

<u>Lucas</u>, 84 F.3d at 535); <u>see also</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477

(2d Cir. 2006).  To determine whether dismissal for failure to prosecute is appropriate,

courts should consider:

> (1) the duration of plaintiff's failure to comply with the court order,
> (2) whether the plaintiff was on notice that failure to comply
> would result in dismissal, (3) whether the defendant[] is likely to
> be prejudiced by further delay . . . (4) a balancing of the court's
> interest in managing its docket with the plaintiff's interest in
> receiving a fair chance to be heard, and (5) whether the judge
> has adequately considered a sanction less drastic than
> dismissal.

<u>Lucas</u>, 84 F.3d at 535*; <u>see also</u> <u>Lewis v. Rawson</u>, 564 F.3d 569, 576 (2d Cir. 2009)

(citations omitted).

    A review of this case's procedural history shows that Youngblood's inactivity began

when mail sent to him on September 4, 2012 was returned as undeliverable on September

12, 2012.  Dkt. Nos. 59, 60.  Subsequently, the Court sent two pieces of mail to an address

listed on Youngblood's other lawsuit, both of which were returned.  Dkt. report entry 9/25/12;

Dkt. Nos. 63, 64.  A notice of a response deadline to defendants' motion for summary

judgment was also returned as undeliverable on November 26, 2012.  Dkt. Nos. 66, 67.

Youngblood has not provided the Court with an updated address subsequent to the

termination of the response deadline.[11]  It is Youngblood's responsibility to keep the Court

and his adversaries apprised of his most current address.  <u>See</u> N.D.N.Y.L.R. 10.1(c)(2),

---

[11]  The website maintained by DOCCS lists Youngblood as "08/31/12 DISCH -
MAXIMUM EXPIRATION."  <u>See</u> DOCCS INMATE POPULATION INFORMATION SEARCH,
http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited Apr. 30,
2013).

20

41.2.  As such, the Court can only conclude that Youngblood has abandoned the prosecution of this action.  Further, after the numerous and unavailing attempts to communicate with Youngblood, to hold this action in abeyance until and upon Youngblood's decision to reestablish contact with the Court would prejudice defendants' interest in resolving the allegations against them.  Lucas, 84 F.3d at 535.  There is no lesser sanction other than dismissal that would not jeopardize the Court's legitimate interest in managing a congested docket with efficiency.  Id.

Accordingly, in the alternative, Youngblood's complaint should also be dismissed with prejudice for his failure to prosecute his action.


## IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 65) be **GRANTED** as to all claims and all defendants and the complaint (Dkt. No. 1) be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  April 30, 2013
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge